## WALTER H. JUAN'S CASE.

### Waldo.    Opinion November 19, 1924.

*That sub-clause (a) under Clause IX., Sec. 1, Chap. 238, Public Laws of 1919, may determine the method of fixing the amount of compensation under the Workmen's Compensation Act, where the employee is employed under coexistent contracts in the employ of more than one employer, it must appear, in order that the total earnings from the different employers may constitute the basis of compensation computation, that such employment has continued under such coexistent contracts during substantially one year immediately preceding the injury.*

Sub-clause (c) affords a guide by which the compensation to be paid this dependent might be estimated were the record sufficient in its detail to supply the basis on which to base an award.

It is not shown whether, at the time of the accident, the employee was working during the ordinary working hours constituting a full working day. If it be that he was, then what he earned in concurrent contracts of employment is of consequence in computing the amount of compensation; otherwise not. In any event, the process to be followed is that of (c) and not of (a).

Workmen's Compensation Case. On appeal from an affirming decree. Walter H. Juan was the husband of this dependent petitioner. On November 7th, 1923, he met with the accident that caused his death. For longer than the immediately preceding year he was an employee of the Pejepscot Paper Company, an assenting employer, at a weekly wage of $10.00. Being free to work elsewhere for hire when his services were not needed by the Pejepscot company, he did odd jobs for sundry persons until within somewhat less than four months before the day of the accident. During this last period he tended masons, at the wage of $5.00 in the summer and $4.50 in the winter, daily. It was while he was working under the Pejepscot contract that the accident occurred. Compensation was awarded, under sub-clause (a) of Clause IX., Sec. 1, Chap. 238, Public Laws of 1919, as if the "concurrent" wages were earned in the employment in which Juan was working at the time of the accident. But that clause may not rule the method of computing compensation. The

reason is that, while the employee was employed under one of the contracts during substantially one year immediately preceding his injury, he was not employed for that length of time under coexistent contracts.

Appeal sustained.   Decree reversed, and case remanded for proper assessment of the compensation.

The opinion states the case.

*Clement F. Robinson,* for appellant.

*Buzzell & Thornton,* for appellee.

SITTING:   CORNISH, C. J., PHILBROOK, DUNN, MORRILL, DEASY, JJ.

DUNN, J.   Admittedly, because of his employment and in that employment's course, on November 7, 1923, Mr. Walter H. Juan met with the accident which caused his death.

Whether sub-clause (a), of the ninth clause of the first section of the Workmen's Act (1919) Laws, Chapter 238, Clause IX., (a), ruled the method of ascertaining the amount of compensation for his dependent widow, is the immediate question of this appeal.

In the first instance, that sub-clause defines how to find "average weekly wages," as the basis for an award up to a proportionate part thereof, on the footing that the daily wage was for work done in the hours of a full working day in the accident-occurring employment, where the employee himself had worked in that employment, though not necessarily for the same employer, in substantial continuity for the year next before the injury.   The mathematical method is, three hundred times one day's wage, divided by fifty-two.   The concluding paragraph of the sub-clause which brings in another element, runs:

"But where the employee is employed regularly during the ordinary working hours concurrently by two or more employers, for one of whom he works at one time and for another he works at another time, his 'average weekly wages' shall be computed as if the wages, earnings or salary received by him from all such employers, were wages, earnings or salary earned in the employment of the employer for whom he was working at the time of the accident."

The facts, as gathered from the finding of the Industrial Accident Commissioner, the evidence not being here, are these:   For somewhat longer than the period of the immediately preceding year, Mr.

Juan had uninterrupted employment with the Pejepscot Paper Company, chiefly as caretaker or watchman about its Belfast wharf and wood-piling place, at a weekly wage of $10. No hours were fixed within which he was to begin and end the work of each day. He went about the Pejepscot premises at night and in the morning, staying as long as necessary. Between times he was free to work elsewhere for hire, except that the Pejepscot Company had priority of requisition upon his services, and he was expected to be ready to come upon call, that he might aid in making fast such craft as came to the wharf, or in casting off when boats were about to sail, or otherwise performing duty for that company, when and as the particular occasion required. Then he would be at liberty to go back to other work. His later contracts recognized the antecedency of that with the Pejepscot.

Odd jobs about Belfast were the sort of other work till less than four months before the accident. Then Mr. Juan hired to tend masons on schoolhouse construction. His pay was fifty cents an hour, ten hours in the summer time and nine hours in the winter constituting a working day, but when the day began or was over is not shown.

On the aforesaid seventh of November, Juan did not labor with the masons, as the weather was rainy. In the evening, at half after six o'clock, while eating supper at his home, he heard the whistle of a Pejepscot tug, and made for the wharf. By some mischance he fell from the wharf and was killed.

An agreement for compensation, reckoned solely from the decedent's wages at the Pejepscot Company, was denied approval by the Labor Commissioner. In consequence of that denial the petition for an award, which is behind this appeal, was filed.

It was wrong, in the eye of the law, to regard the case as falling within the lines of sub-clause (a), which the Industrial Chairman did. Patently, from the phrase and context of the sub-clause, the final or "concurrent" paragraph refers to instances where the total earnings were from different employers during substantially one year immediately preceding the injury, and not where the earnings for that space came from but one of the employers, though the accident arose out of and in the course of the contract of longest duration. As the idea of liability without regard to fault, as a matter of right, where his own self-will was not the proximate cause of the employee's injury,

is the underlying conception of the whole act, so that of an indemnity proportioned with regard to the fair average of the diminution in wage-earning power, in which respect the wages from more than one employment, when the contracts of employment were coexistent, count as though earned in a single employment, within the limit of a full working day, spreads through every part of the sub-clause. The concurrent contracts of service which Mr. Juan had, on which the award of compensation was related, were not throughout the year preceding the injury, hence sub-clause (a) was not applicable.

Compensation ought to be paid, but how shall the amount be ascertained?

Sub-clauses (b) and (c), and there is none other, introduce substitutes for sub-clause (a). "B," leaving out the wage of the injured employee, where he was not in the employment for the preceding year, brings in as a multiplicand the day wage of any other employee of like class and similar duties, who was. For the rest, (b) is in line with (a), except that no sharp *but* is connective to a new thought ushering in a determinative factor, equivalent to the original statement with which it is closely and vitally joined, where there were concurrent contracts of service, done at different times, during the "ordinary working hours."

The concurrent-employments paragraph, let it be noticed, is expressly written solely into sub-clause (a). And it may be observed, too, that our concurrent provision varies from that in the English law enacted in 1906 (6 Edw. VII., Chap. 58), not alone in the absence from the English of the phraseology "during the ordinary working hours concurrently . . . .," but in that ours, as has already been taken notice of, carries the concurrent provision as the last paragraph of (a), whereas the difference is an independent clause under a section in the general schedule, thus:

"(b) Where the workman had entered into concurrent contracts of service with two or more employers under which he worked at one time for one such employer and at another time for another such employer, his average weekly earnings shall be computed as if his earnings under all such contracts were earnings in the employment of the employer for whom he was working at the time of the accident." *English Act,* supra.

Obviously sub-clause (b) of the Maine statute, to return to the matter the appeal puts in hand, is without relevancy to the situation.

No other employee had "such employment during substantially the whole of (the) immediately preceding year."

When neither the method of (a) nor that of (b) may be "reasonably and fairly" applied, then, by the authority of sub-clause (c), the average weekly wage standard of ascertainment, on survey of the position that the injured employee had, and that of the positions had by other employees in the same or most similar employment, there or thereabouts,—always regarding virtually one year constitutive when practicable (*Thibeault's Case*, 119 Maine, 336), but only where feasible (*Clara E. Scott's Case*, 121 Maine, 446), shall be an approximation of the wages of the injured employee in his employment at the time he was hurt.

Sub-clause (c) affords a guide by which the compensation to be paid this dependent might be estimated were the record sufficient in its detail to supply the basis on which to base an award. But, on what the statute contemplates as the practical averaging of the sum of the wages of the employees, what sum would fairly represent "the weekly earning capacity of the injured employee at the time of the accident?" The employee had been paid $10 weekly, for longer than the year, in the employment in which he was working when injured. And he had other contracts of service in the same year, all, however, of shorter length than the ten-dollar contract, in one of which he averaged $30 weekly.

Does the last paragraph of (a) apply? It would beyond doubt or question had it outstanding distinctiveness and lucidity like the clause in the English act, where the reader's eye gathers meaning and the scope of application at a single stroke. (*S. S. Raphel* v. *Brandy*, 1911 A. C., 413; *Lloyd* v. *Midland Company*, 1914 2 K. B., 53). Our provision is rather inaptly placed. Yet, mindful of the idea beneath the statute, that of insurance against the loss of capacity to earn, with employees classified uniformly from the standpoint of actual earnings in "the ordinary working hours," the final paragraph of (a) following the advance and association of legislative purpose from point to point, woven section and clause and sub-clause in a succession embodying great intrinsic might, must be held to be read by attraction into the sub-clauses succeeding (a), within the policy and spirit and true intent of the Legislature.

Distinction between the English act and the Maine statute is worthy notice once more. England's standard comprehends all the

earnings from all the concurrent contracts. Therefore, overtime on an employee's part would add to and short time by him would subtract from, the amount of the standard in the individual case. Or, to say to the same effect in another way, all earnings under contracts, regardless of when, one after the other, the contracts were worked, are to be considered. In Maine there is restriction to actual earnings from regular employments during the ordinary working hours. Beyond this there never was legislative design to make the industry of the accident responsible. Actual earnings, "working the number of hours constituting a full working day in (the) employment," two or more contracts of employment existing at the same time shading into each other through ordinary working hours, mark the way.

Nothing on the record shows whether, at the time of the fatal accident, the employee was working during the ordinary working hours constituting a full working day. If it be that he was, then what he earned in concurrent contracts of employment is of consequence in computing the amount of compensation; otherwise not. In any event, the process to be followed is that of sub-clause (c) and not that of sub-clause (a).

Let the appeal be sustained, the decree below reversed, and the case remanded to the Industrial Accident Commission for proper assessment of the compensation upon further hearing.

*Appeal sustained.*
*Decree reversed.*
*Case remanded.*